UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00094-GNS-HBB

MICHAEL DALE AUGENSTEIN                                    PLAINTIFF

v.

MILBANK INSURANCE COMPANY                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Partial Summary Judgment (DN 53), and Defendant's Motion to Exclude Expert Testimony (DN 54). The motions are ripe for adjudication.

## I.    BACKGROUND

Plaintiff Michael Dale Augenstein ("Augenstein") brought this action asserting claims for breach of contract and statutory bad faith under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA") arising from a claim asserted under his homeowner's insurance policy (the "Policy")[1] issued by Defendant Milbank Insurance Company ("Milbank") (improperly named as State Auto Insurance Companies). (Am. Compl. ¶¶ 1-2, 18-31, DN 34). The causes of action arise from Milbank's denial of Augenstein's insurance claim following a fire, theft, and vandalism at his residence (the "Property") located in Bowling Green, Kentucky. (Am. Compl. ¶¶ 3-17).

After the issues of coverage and bad faith were bifurcated, the parties proceeded to conduct discovery on the coverage issues. (Agreed Order 1, DN 16). Milbank has now moved for partial summary judgment on the coverage issues and to exclude expert testimony on behalf

---

[1] The relevant provisions of the Policy at issue are based on Insurance Services Office, Inc. ("ISO") Form No. HO 00 03 05 11, Homeowners 3 – Special Form.

of Augenstein.  (Def.'s Mot. Partial. Summ. J., DN 53; Def.'s Mot. Exclude Expert Test., DN 54).

## II.    JURISDICTION

Jurisdiction in this matter is based on diversity of citizenship under 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.  (Notice Removal 2-3, DN 1).

## III.    DISCUSSION[2]

### A.    Defendant's Motion for Partial Summary Judgment

Milbank asserts that it is entitled to summary judgment because Augenstein failed to submit a timely proof of loss and there was no coverage for the loss because the residence was vacant at the time of the loss.  (Def.'s Mem. Supp. Mot. Partial Summ. J. 10-19, DN 53-1). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case . . . .'"  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim.  *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

---

[2] Because the Policy was issued in Kentucky for a Kentucky residence, this Court will apply Kentucky law in its interpretation.  *See Great Am. Ins. Co. of N.Y. v. Brock Constr. Co.*, No. 05-569-KKC, 2007 WL 2844945, at *2 (E.D. Ky. Sept. 28, 2007).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the [moving party's] position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Anderson*, 477 U.S. at 252.

### 1.    *Proof of Loss*

Milbank's first basis for summary judgment arises from Augenstein's alleged failure to comply with the Policy's requirements for proof of loss. (Def.'s Mem. Supp. Mot. Summ. J. 10-17). In general, "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977). Under Kentucky law, post-loss duties like submitting a sworn proof of loss and cooperating with the insurer's investigation are treated as conditions precedent to coverage. *See Am. Centennial Ins. Co. v. Wiser*, 712 S.W.2d 345, 345-47 (Ky. App. 1986) (granting judgment where the insured failed to submit a timely proof of loss); *Great Am. Ins. Co. of N.Y.*, 2007 WL 2844945, at *23 (same). Courts have applied the doctrine of substantial compliance but only when the insured's performance approximates full adherence to policy terms. *See Westchester Fire Ins. Co. of N.Y.*

*v. Gray*, 240 S.W.2d 825, 827-28 (Ky. 1951).  Whether an insured has breached post-loss duties and whether any failure caused prejudice are typically treated as fact questions, but may be resolved as a matter of law when the material facts are undisputed.  *See Muhammad v. State Farm Fire & Cas. Co.*, No. 91-4119, 972 F.2d 347, 1992 WL 188118, at *1 (6th Cir. Aug. 6, 1992).

> In relevant part, the Policy provides:
>
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
> 1.      Give prompt notice to us or our agent;
> 2.      Notify the police in case of loss by theft;
> . . .
> 5.      Cooperate with us in the investigation of a claim;
> 6.      Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss.  Attach all bills, receipts and related documents that justify the figures in the inventory;
> 7.      As often as we reasonably require:
>    a.      Show the damaged property;
>    b.      Provide us with records and documents we request and permit us to make copies; and
>    c.      Submit to examination under oath, while not in the presence of another "insured", and sign the same;
> 8.      Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
>    a.      The time and cause of loss;
>    b.      The interests of all "insureds" and all others in the property involved and all liens on the property;
>    c.      Other insurance which may cover the loss;
>    d.      Changes in title or occupancy of the property during the term of the policy;
>    e.      Specifications of damaged buildings and detailed repair estimates;
>    f.      The inventory of damaged personal property described in 6. above . . . .

(Def.'s Mot. Partial Summ. J. Ex. 1, at 33, DN 53-2).  Therefore, the terms of the Policy required Augenstein to provide a signed and sworn proof of loss within 60 days of Milbank's request and to cooperate with Milbank's investigation.  (Def.'s Mot. Partial Summ. J. Ex. 1, at 33).

4

On July 23, 2021, Augenstein reported the loss which had occurred about five days earlier. (Def.'s Mot. Partial Summ. J. Ex. 3, at 2, DN 53-4). On September 7, 2021, Milbank issued a reservation of rights letter and requested information in support of the loss, including the necessity of a signed proof of loss within 60 days and certain documentation. (Def.'s Mot. Partial Summ. J. Ex. 4, at 2-8, DN 53-5). The requested documents included: (i) "[d]ocumentation to help [Milbank] determine, if the property was vacant at the time"; (ii) "[d]ocumentation regarding how long the property has been vacant"; (iii) "[u]tilities records from 2020-present"; (iv) "[d]ocumentation concerning the foreclosure on the property"; and (v) "[a] detailed list of the personal property being claimed in the theft including ownership documentation and/or records[.]" (Def.'s Mot. Partial Summ. J. Ex. 4, at 7).

On April 9, 2022, Augenstein submitted a proof of loss that was unsigned and incomplete. (Def.'s Mot. Partial Summ. J. Ex. 7, at 2-23, DN 53-8). The proof of loss included a brief listing of items without any detailed description, age, or value. (Def.'s Mot. Partial Summ. J. Ex. 7, at 19-21). No photos or documentation regarding those items was provided, and Augenstein claimed that he was unable to secure proof prior to the foreclosure sale of the Property.[3] (Augenstein Dep. 141:25-142:9).

Finally, more than eleven months after Milbank's reservation of rights letter (and more than one year after the fire), Augenstein submitted a signed and notarized proof of loss on August 8, 2022. (Def.'s Mot. Partial Summ. J. Ex. 8, at 3-4, DN 53-9). This version of Augenstein's proof of loss, however, listed the Policy's Coverage A limits of $1.371 million and "All Personal Belongings/Property" without any detailed inventory. (Def.'s Mot. Partial Summ. J. Ex. 8, at 4). During his deposition, Augenstein admitted he had not provided an itemization or

---

[3] Augenstein testified that a significant amount of his property was stolen. (Augenstein Dep. 110:12-111:21, May 10, 2024, DN 59-12).

any further documentation in support of his claim to Milbank as of August 8, 2022. (Augenstein Dep. 153:2-8). Almost 33 months after the loss and while this lawsuit was pending, Augenstein provided in April 2024 an itemization of personal property totaling $628,469.17, which he had not signed. (Def.'s Mem. Supp. Mot. Summ. J. 15 (citing Def.'s Mot. Summ. J. Ex. 10, DN 53-11)).

The record reflects that Augenstein did not comply with his obligations under the Policy to provide proof of loss within 60 days. As discussed above, Augenstein's efforts to respond to Milbank's request for proof of loss continued to be incomplete and in contravention of his obligations under the Policy, and there is no evidence in the record that would support a finding of substantial compliance. Augenstein failed to submit timely a signed, sworn proof of loss within 60 days bar coverage for this loss, and he therefore cannot prove a breach of contract by Milbank as a matter of law. *See Great Am. Ins. Co. of N.Y.*, 2007 WL 2844945, at *2-6; *One Beacon Ins. Co. v. Chiusolo*, No. 5:05-201-JMH, 2007 WL 1728707, at *3 (E.D. Ky. June 13, 2007); *Cothran v. Hartford Accident & Indem. Co.*, No. 88-0105-P(J), 1989 WL 165010, at *1-2 (W.D. Ky. Feb. 10, 1989).

The record also reflects that Milbank was necessarily prejudiced due to Augenstein's failure to submit a timely proof of loss and requested documentation. In the aftermath of the loss Augenstein only returned to the Property once, on August 9, 2021. (Augenstein Dep. 119:21-25). Even though there was a foreclosure action filed against the Property, Augenstein did not take any steps to remove his personal property from the residence or request anyone to enter the Property to make an inventory of the remaining personal property after the loss, and the Property

was sold at a master commissioner sale shortly after the loss.[4]    (Augenstein Dep. 125:5-8, 125:13-19).    Augenstein's failure to comply with his obligations under the Policy deprived Milbank of the ability to fully investigate his loss.

Thus, Milbank is entitled to summary judgment.  *See Doerr v. Allstate Ins. Co.*, 121 F. App'x 638, 640 (6th Cir. 2005) (affirming summary judgment because of the failure to cooperate depriving the insurer of ability to investigate).

### 2.    *Coverage*

Milbank argues that it is also entitled to summary judgment based on the vacancy exclusion in the Policy, which excluded coverage for loss due to "vandalism or malicious mischief" or any ensuing loss caused by "vandalism or malicious mischief" occurring when the Property had been vacant for more than 60 days prior to the loss.  (Def.'s Mem. Supp. Mot. Partial Summ. J. 17-19).  Millbank's investigation into Augenstein's loss determined that an unknown person or persons had made forced entry into the residence and set three separate fires, resulting in damage to the garage and smoke damage throughout the residence.  (Def.'s Mot. Partial Summ. J. Ex. 3, at 3-4).  Augenstein does not dispute the cause of his loss and he characterized his residence after the fire as a "crime scene."  (Augenstein Dep. 107:11, 108:16-23).  At the time of the loss, however, Augenstein contends that the Property was not vacant, as evidenced by his travel between Kentucky and South Carolina, active utilities to the Property, and the presence of personal property in the residence.  (Pl.'s Resp. Def.'s Mot. Partial Summ. J. 8-10, DN 59).

---

[4] By mid-2020, Augenstein recognized that foreclosure on the Property was imminent and had stopped making mortgage payments.  (Augenstein Dep. 36:11-23).  On July 21, 2021, the Warren Circuit Court (Kentucky) granted default judgment against Augenstein and ordered the sale of the property by master commissioner sale, which appears to have occurred in late August 2021.  *See Farmers Bank & Tr. Co. v. Augenstein*, No. 20-CI-01061 (Warren Cir. Ct.).

The Policy language relating to the vacancy exclusion provides:

**SECTION I – PERILS INSURED AGAINST**
**A.        Coverage A – Dwelling And Coverage B – Other Structures**
**1.**        We insure against direct physical loss to property described in Coverages **A** and **B**.
**2.**        We do not insure, however, for loss:
   . . .
  **c.**        Caused by:
     . . .
       **(4)**        Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss.   A dwelling being constructed is not considered vacant . . . .

(Def.'s Mot. Partial Summ. J. Ex. 1, at 28).

The term "vacant" is not defined in the Policy.   As Kentucky's highest court has explained:

> The meaning of the terms "vacant," "unoccupied," or "uninhabited" is a question of law for the court, but whether at the time of the destruction of a building by fire it is "vacant," "unoccupied," or "uninhabited" is one of fact for the determination of a jury.   Each case must be determined on its own facts and circumstances.   A building may be vacant within the meaning of the term "vacant," though "far from being empty of everything but air."   "Vacant" is not synonymous with the term "unoccupied."   However, the terms may be, and often are, treated as synonymous. It is not necessary that property be both vacant and unoccupied, without the consent of the insurer, to entitle the insurer to avail itself of a condition of the policy providing a forfeiture if it becomes vacant, unoccupied, or uninhabited.

*Cont'l Ins. Co. of N.Y. v. Dunning*, 60 S.W.2d 577, 579 (Ky. 1933) (internal citations omitted) (citation omitted).   While courts are to construe any ambiguity in an insured's favor, the fact that a word goes undefined in an insurance policy—as "vacant" is here—does not render that term ambiguous.   *See Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 194 (Mich. 1999) ("The fact that a policy does not define a relevant term does not render the policy ambiguous." (citation omitted)).

Construing the evidence in the proper light, Augenstein recalled traveling to Bowling Green "[p]robably every couple of months, if not more often" between May 2020 and May 2021. (Augenstein Dep. 39:20-23). He testified he decided in late 2020 he no longer needed his Bowling Green residence because he would be living full-time in South Carolina to run a restaurant there. (Augenstein Dep. 36:24-37:21). As Augenstein acknowledged, he was residing in Hilton Head full-time after May 6, 2021, and had moved his cat from Bowling Green to Hilton Head by that time. (Augenstein Dep. 40:25-41:2, 51:23-52:18). Utility records for the Property reflect minimal electric and water usage during the last few months before the loss.[5] (Def.'s Mot. Partial Summ. J. Ex. 7, at 8, 11).

Other courts have applied the vacancy exclusion in ISO Form HO 00 03 05 11 in resolving coverage issues. Those courts have considered similar circumstances and held that the property was vacant at the time of loss. *See, e.g.*, *Vennemann v. Badger Mut. Ins. Co.*, 334 F.3d 772, 774 (8th Cir. 2003) ("'[T]he sustained presence of a resident, particularly in the hours of darkness, appears logically as the critical factor where the premises are a dwelling.' . . . Here, [the plaintiff's] random overnight stays and daytime visits do not represent a sustained presence at the dwelling for the purpose of minimizing the risk of arson." (internal citations omitted)); *Barlow v. Allstate Texas Lloyds*, 214 F. App'x 435, 436-37 (5th Cir. 2007) (granting summary judgment because the property was vacant based on evidence that the insureds had not lived in

---

[5] The records from Warren Rural Electric Cooperative Corporation ("WRECC") for the Property reflect electrical usage of 240, 160, and 240 kWh for the months of April, May, and June 2021, respectively. (Def.'s Mot. Partial Summ. J. Ex. 7, at 8). The last months with substantial electrical usage of 3280 and 6160 kWH were February and March 2021, respectively, prior to the fire in July. (Def.'s Mot. Partial Summ. J. Ex. 7, at 8). Similarly, WRECC records for water usage reflect bills in the amounts of $42.47, $34.22, and $46.19 for the months of April, May, and June 2021. (Def.'s Mot. Partial Summ. J. Ex. 7, at 11). The last months with significant water bills in the amounts of $322.20 and $591.03 were February and March 2021, respectively. (Def.'s Mot. Partial Summ. J. Ex. 7, at 11).

the house for about three months before the loss, were remodeling the bathroom, and most of the furniture had been removed).

Augenstein also cannot rely on the periodic presence of two persons—Jill Smith and Houston Carlock—who he had authorized to check on the property in his absence. (Augenstein Dep. 41:13-22). Augenstein testified that these individuals never lived in the residence, and he was unaware of them staying overnight. (Augenstein Dep. 49:20-50:3). Therefore, the visits of these individuals are insufficient to establish that the Property was not vacant for 60 days prior to Augenstein's loss. *See Vennemann*, 334 F.3d at 774.

Finally, the presence of items of personal property at the time of loss is not proof that the property was inhabited. "The use of a dwelling for limited storage purposes [] does not establish that the dwelling was not vacant." *Estes v. St. Paul Fire & Marine Ins. Co.*, 45 F. Supp. 2d 1227, 1230 (D. Kan. 1999) (citations omitted) (interpreting ISO Form HO 00 03 05 11); *see also Durasevic v. Grange Ins. Co. of Mich.*, 328 F. Supp. 3d 770, 775 (E.D. Mich. 2018) (citation omitted) (rejecting the argument that the presence of "inanimate objects at the time of the fire, including furniture, appliance, and other items of personal property" precluded the application of the vacancy exclusion). As one court noted, "[v]irtually no building could be considered vacant if the notion of vacancy is defeated by the existence of a paper clip, a stray pencil, or a light bulb." *Catalina Enters., Inc. Pension Tr. v. Hartford Fire Ins. Co.*, 67 F.3d 63, 66 (4th Cir. 1995).

For these reasons, the Policy's vacancy exclusion was effective to bar coverage for Augenstein's loss because of his admission that he had not resided at the Property since May 6, 2021, which was more than 60 days prior to the fire on July 18, 2021. Based on the undisputed facts discussed above, no reasonable jury could conclude that the Property was "routinely

characterized by the presence of human beings" during the 60 days preceding the date of loss. Accordingly, Milbank is also entitled to summary judgment on this basis.

      **B.**    <u>**Defendant's Motion to Exclude Expert Testimony**</u>

Because the Court has granted summary judgment for Millbank on the coverage claim, it is unnecessary to address Millbank's motion to exclude.  Thus, this motion is denied as moot.

**IV.**    <u>**CONCLUSION**</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendant's Motion for Partial Summary Judgment (DN 53) is **GRANTED**, and Plaintiff's breach of contract claim is **DISMISSED WITH PREJUDICE**.

2.    Defendant's Motion to Exclude Expert Testimony (DN 54) is **DENIED AS MOOT**.

Greg N. Stivers, Chief Judge

United States District Court

August 22, 2025

cc:    counsel of record